IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM D. KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-3249-CV-S-NKL-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

Pending before the Court is Plaintiff William D. King's Motion for Summary Judgment [Doc. # 12]. King seeks judicial review of the Commissioner's denial of his requests for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. ("the Act"), and supplemental security income ("SSI") benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. The complete facts and arguments are presented in the partes' briefs and will be duplicated here only to the extent necessary. Because the Court finds that the Administrative Law Judge ("ALJ") failed to consider King's severe mental impairments, the Court remands the case to the ALJ for further consideration.

**I.     Overview**

In his applications for benefits, King alleged that he was born in 1963 and became disabled on July 16, 2002, when he was 39 years old. (Tr. 283, 772.) Specifically, King

1

claims disability because of "short-term memory loss, broken right hand, bipolar affective disorder, gunshot wound residuals, motor vehicle accident residuals, right foot and ankle injury residuals, neck and back pain with leg involvement, arthritis, left hearing loss, separated shoulder, broken nose, irregular heartbeat, shaking, trembling, and inability to stand." (Tr. 20.)

King earned either a high school degree or a high school equivalency degree and studied computer programming and accounting at a local business college. (Tr. 305, 361, 645.) He has worked as a tractor-trailer mechanic and rebuilder, a farm equipment rebuilder and repairer, and a limousine interior installer and supervisor. (Tr. 300, 313-20, 351-52, 711.) In addition, King was self-employed as a vending machine route owner and operator. (Tr. 322, 351, 711.)

King has a long history of drug and alcohol abuse. He reports that he has been arrested for driving while intoxicated six or seven times and for assault at least four times. (Tr. 350, 413, 710.)

## II.   Evidence of King's Mental Impairments

King's earliest record of a mental impairment is dated February 3, 1999. On that date, King was given a Comprehensive Psychological Evaluation. The examiner (whose identity is not indicated in the record) noted that King was a 35 year old, separated, Caucasian with average intelligence, a history of drug and alcohol abuse and past problems controlling his anger. King told the examiner that he was taking medication for depression and that he sustained a skull fracture in 1998. (Tr. 366.)

2

Case 6:06-cv-03249-NKL   Document 18   Filed 05/04/07   Page 2 of 7

Nearly three years later, on December 20, 2001, a health professional at Dr. Gil's Immediate Care provisionally diagnosed King with manic depression (bipolar) disorder. (Tr. 372.)  Approximately one year after King's evaluation at Dr. Gil's, Dr. Eva Wilson conducted a psychological evaluation of King.  Dr. Wilson diagnosed King with bipolar disorder, alcohol dependence, anxiety disorder and personality disorder with hypochondriacal and schizoid features.  She concluded that King

> is a 39 year-old, thin, Caucasian, separated male who has been in several car accidents and has suffered many injuries, including a skull fracture, leg and back injuries, and has been diagnosed with bipolar disorder by Dr. Carl Dawson.  He also is in recovery from alcohol dependence.  Mr. King is functioning in the average range of intellectual functioning.  He does not appear to be cognitively impaired at this time.  He is, however, emotionally impaired by his problems with anxiety, depression, and the presence of bizarre and unusual thoughts.  He also is extremely concerned about his physical symptoms.

(Tr. 414.)

In a November 25, 2002 letter to Disability Determination, Carl Dawson wrote that King

> attempted to represent his present situational concerns more negatively than most individuals would be willing to admit.  It is likely that he was attempting to display a "cry for help" profile.  His profile clearly indicates that his use of alcohol and other mood altering substances has portrayed a significant degree of involvement with regards to his past and present emotional, psychological and physiological difficulties. . . .  He was recommended to attend and participate in area Alcoholics Anonymous (AA) meetings to discontinue his use of all mood altering substances and to be further evaluated for the possible use of anti-depressant medications.  At the time of his initial session his mental status was free of any suicidal or homicidal ideations, contemplations or tendencies.  He appeared depressed.

3

(Tr. 416-17.) Dawson also wrote that King had experimented with alcohol, methamphetamine and LSD, but marijuana is his primary drug of choice. (Tr. 416.)

On January 29, 2003, Dr. Dewey Ballard completed a disability assessment of King. Dr. Ballard found that King's physical impairments were unremarkable, but also noted that King has a history of bipolar affective disorder. (Tr. 421-26.) Three months later, King checked in to an emergency room and complained about hearing voices. (Tr. 568.)

From March 3, 2004 to May 28, 2004, Dr. Angela Olomon provided psychological counseling to King. Dr. Olomon diagnosed King with schizoaffective disorder. On May 28, 2004, Dr. Olomon completed a Medical Source Statement-Mental on King. In her report, she indicated that King was moderately limited in his ability to remember locations and work-like procedures; understand, remember and carry out very short and simple instructions; and be aware of hazards and take appropriate precautions. Dr. Olomon concluded that King was markedly limited in his ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform within a schedule and sustain an ordinary routine without supervision; make simple work-related decisions and maintain a normal workday and workweek; interact appropriately with the general public; ask simple questions; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers; maintain socially appropriate behavior and cleanliness; respond appropriately to changes in the work setting; travel in unfamiliar places; and set realistic goals. (Tr. 647-49.)

Dr. Olomon's report differed from that of Dr. Linda Lewis. Dr. Lewis's report, which is dated May 25, 2004, indicates that King is moderately limited in his ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday or workweek and perform at a consistent pace; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them; and set realistic goals. In all other respects, Dr. Lewis concluded that King's impairments did not significantly limit his abilities and Dr. Lewis found no abilities that were markedly limited. (Tr. 668-71.)

Though Dr. Olomon's and Dr. Lewis's reports differ, both doctors agree that some of King's abilities are at least moderately limited by his mental impairments.

Of the health professionals, Dr. David Lutz was the most skeptical of King's claimed mental impairments. He concluded that King had, at most, a mild cognitive disorder though he found that King "likely has experienced some bouts of major depression that have been exacerbated by his alcohol and cannabis usage." (Tr. 715-16.)

### III. The ALJ's Findings

5

Following the hearing, the ALJ issued a written opinion denying benefits in which he found that King had severe impairments including spinal degenerative joint disease and right ankle injury residuals. (Tr. 21.) Despite the mental impairments diagnosed by Drs. Olomon, Wilson, Lewis, Lutz and others, the ALJ did not find that any of King's mental impairments were "severe" within the meaning of the Social Security regulations at step two of his evaluation. At King's June 7, 2004 hearing, the ALJ remarked that "a severe impairment or impairments are those that significantly limit an individual's physical or mental ability to perform basic work activities." (Tr. 57.) The ALJ's statement, however, does not accurately reflect Eighth Circuit law. In the Eighth Circuit, for an impairment not to be considered "severe" within the meaning of the Social Security regulations, it can have "no more than minimal effect on claimant's ability to work." *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996). Because the ALJ did not find that King's mental impairments were "severe" at step two, he never considered whether King's mental impairments, in combination with any of his other severe impairments, precluded all employment at step five. *See Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990) (an ALJ must not substitute his opinions for those of the physician).

Since the step two threshold for determining whether an impairment is severe is so low, and since the ALJ ignored the opinions of several physicians who found that King had mental impairments that affected his ability to work, the Court is unable to determine whether the ALJ's determination as a whole is supported by substantial evidence. As a result, the Court concludes that remand for further consideration by the ALJ is warranted

6

under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should properly consider whether King's severe mental impairments, in conjunction with the severe physical impairments found in the ALJ's earlier opinion, preclude King from all employment.

## IV. Conclusion

Accordingly, it is hereby

ORDERED that King's Motion for Summary Judgment [Doc. # 12] is GRANTED IN PART. The decision of the ALJ is REVERSED and the case is REMANDED for further consideration consistent with this ORDER.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: May 4, 2007
Jefferson City, Missouri

7

Case 6:06-cv-03249-NKL   Document 18   Filed 05/04/07   Page 7 of 7